UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RHONDA COSTIGAN,

      Plaintiff,

v.

DELTA AIR LINES, INC., et al.,

      Defendants.

Case No. 2:17-cv-11903
Hon. Bernard A. Friedman
Magistrate Stephanie D. Davis

---

GOODMAN ACKER, PC
Gerald H. Acker (P32973)
Amanda B. Warner (P74128)
*Attorneys for Plaintiff*
17000 W. Ten Mile Road, 2nd Floor
Southfield, Michigan  48075
(248) 483-5000
gacker@goodmanacker.com
awarner@goodmanacker.com

JAFFE RAITT HEUER & WEISS, PC
Scott R. Torpey (P36179)
Justin M. Schmidt (P78125)
*Attorneys for Defendants*
27777 Franklin Road, Suite 2500
Southfield, MI  48034
(248) 351-3000
(248) 351-3082 (Fax)
storpey@jaffelaw.com
jschmidt@jaffelaw.com

---

**DEFENDANT DELTA AIR LINES, INC.'S
<u>MOTION FOR SUMMARY JUDGMENT</u>**

**ORAL ARGUMENT REQUESTED**

Co-defendant Delta Air Lines, Inc. ("Delta"), only, respectfully moves this

Court for summary judgment under Fed. R. Civ. P. 56 to dismiss with prejudice all

of Plaintiff Rhonda Costigan's ("Plaintiff") claims against Delta. The facts and law

in support of this motion are set forth with particularity in the accompanying

memorandum of law, which Delta files in accordance with E.D. Mich. L.R. 7.1(d) and this Court's individual rules. Per E.D. Mich. L.R. 7.1(a), the undersigned states that on January 3, 2018, his colleague emailed Plaintiff's counsel regarding whether Plaintiff intends to concur with Delta's motion for summary judgment and explained the substance of Delta's motion, and also attempted multiple phone calls and left messages with Plaintiff's counsel's office, but received no response to any of the communications. Delta confirms it has satisfied its L.R. 7.1(a) obligations.

Accordingly, Delta respectfully requests that the Court enter an order granting summary judgment in favor of Delta, only, and dismissing all of Plaintiff's claims with prejudice as a matter of law, and granting any further legal and equitable relief as this Court deems necessary and proper.

Defendant ExpressJet Airlines, Inc. ("ExpressJet") fully concurs with Delta's motion.

Respectfully submitted,

JAFFE RAITT HEUER & WEISS, P.C.

By:  /s/Scott R. Torpey
    Scott R. Torpey (P36179)
    Justin M. Schmidt (P78125)
*Attorneys for Defendants*
27777 Franklin Road, Suite 2500
Southfield, Michigan 48034
(248) 351-3000
(248) 351-3082 (Fax)

Dated:  January 4, 2018

2

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RHONDA COSTIGAN,

        Plaintiff,

v.                            Case No. 2:17-cv-11903
                                Hon. Bernard A. Friedman
                                Magistrate Stephanie D. Davis

DELTA AIR LINES, INC., et al.,

        Defendants.

---

GOODMAN ACKER, PC
Gerald H. Acker (P32973)
Amanda B. Warner (P74128)
*Attorneys for Plaintiff*
17000 W. Ten Mile Road, 2nd Floor
Southfield, Michigan  48075
(248) 483-5000
gacker@goodmanacker.com
awarner@goodmanacker.com

JAFFE RAITT HEUER & WEISS, PC
Scott R. Torpey (P36179)
Justin M. Schmidt (P78125)
*Attorneys for Defendants*
27777 Franklin Road, Suite 2500
Southfield, MI  48034
(248) 351-3000
(248) 351-3082 (Fax)
storpey@jaffelaw.com
jschmidt@jaffelaw.com

---

**DEFENDANT DELTA AIR LINES, INC.'S MEMORANDUM OF LAW IN
SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

**ORAL ARGUMENT REQUESTED**

# **TABLE OF CONTENTS**

Page

INDEX OF AUTHORITIES.......................................................................... ii

STATEMENT OF ISSUES PRESENTED....................................................iv

STATEMENT OF CONTROLLING/MOST APPROPRIATE
      AUTHORITY ..................................................................................... v

INTRODUCTION ...........................................................................................1

STATEMENT OF MATERIAL FACTS ..........................................................2

STANDARD OF REVIEW ............................................................................10

ARGUMENT .................................................................................................10

I.     There Is No Direct Negligence of Any Delta Employees Relative to
      the Subject Flight, and Delta Has No Vicarious Liability for the
      Alleged Conduct of ExpressJet.........................................................10

          A.    Negligence Standards.................................................10

          B.    There is No Direct Negligence of Any Delta Employees
                Regarding the Alleged Assault on the Subject Flight...............12

          C.    Delta Has No Vicarious Liability for the Alleged
                Conduct of ExpressJet.............................................15

          D.    Delta Cannot Be Liable for Negligent Infliction of
                Emotional Distress ..................................................22

CONCLUSION ...............................................................................................23

i

# INDEX OF AUTHORITIES

**Page(s)**

**Cases**

*In re Air Crash at Lexington, Ky.*, *Aug. 27, 2006*,
   No. 5:06-CV-316, 2008 WL 2945944 (E.D. Ky. July 8, 2008) .....................v, 17

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 (1986).............................................................................................10

*Breighner v. Mich. High Sch. Athletic Ass'n, Inc.*,
   255 Mich. App. 567, 662 N.W.2d 413 (2003)..................................................15

*Campbell v. Kovich*,
   273 Mich. App. 227, 731 N.W.2d 112 (2006)............................................15, 16

*Celotex Corp. v. Catrett*,
   477 U.S. 317 (1986)........................................................................................v, 10

*Craig ex rel. Craig v. Oakwood Hosp.*,
   471 Mich. 67, 684 N.W.2d 296 (2004).....................................................v, 11, 12

*Deitz v. Wometco W. Mich. TV, Inc.*,
   160 Mich. App. 367, 407 N.W.2d 649 (1987)..................................................22

*Duran v. Detroit News, Inc.*,
   200 Mich. App. 622, 504 N.W.2d 715 (1993)........................................v, 22, 23

*Frederick v. City of Detroit*,
   370 Mich. 425 (1963) ........................................................................................11

*Freese v. Cont'l Airlines, Inc.*,
   No. 1:08-CV-1070, 2009 WL 2232857 (N.D. Ohio July 23, 2009),
   *aff'd in part, remanded in part on other grounds*, 412 F. App'x
   770 (6th Cir. 2011)..............................................................................v, 17, 18, 19

*Haley v. United Airlines Inc.*,
   No. 14 C 2614, 2015 WL 5139638 (N.D. Ill. Aug. 31, 2015) ...........v, 17, 19, 21

*Laster v. Henry Ford Health Sys.*,
   316 Mich. App. 726, 892 N.W.2d 442 (2016).........................................v, 12, 15

*Limmer v. Sw. Airlines*,
    No. 98 Civ. 75282, 2000 WL 1481022 (E.D. Mich. Sept. 27, 2000)................11

*Little v. Howard Johnson Co.*,
    183 Mich. App. 675, 455 N.W.2d 390 (1990)....................................................15

*Matsushita Electric Indus. Co. v. Zenith Radio Corp.*,
    475 U.S. 574 (1986)...................................................................................10

*Pina v. FCA U.S. LLC*,
    618 F. App'x 820 (6th Cir. 2015) ................................................................11

*Schultz v. Consumers Power Co.*,
    443 Mich. 445 (1993) ................................................................................11

*Skinner v. Square D Co.*,
    445 Mich. 153, 516 N.W.2d 475 (1994)...............................................11, 12

*Sponagle v. USAir Group*,
    81 Ohio App. 3d 789, 612 N.E.2d 395 (Ohio Ct.App.1992).........................v, 16

*Stanford v. Kuwait Airways Corp.*,
    648 F. Supp. 1158 (S.D.N.Y.1986) ..............................................................v, 16

*Utley v. Taylor & Gaskin, Inc.*,
    305 Mich. 561, 9 N.W.2d 842 (1943)............................................................16

*Wargelin v. Mercy Health Corp.*,
    149 Mich. App. 75, 385 N.W.2d 732 (1986)..................................................22

**Rules**

Fed. R. Civ. P. 56 ..........................................................................v, 1, 10, 23

**Statutes**

49 U.S.C. § 41712(c)(1)(A) ...........................................................................9

**Regulations**

14 C.F.R. § 121.533 .................................................................................v, 19, 21

14 C.F.R. § 257.5 .........................................................................................9

## <u>STATEMENT OF ISSUES PRESENTED</u>

1.  Should this Court grant summary judgment in favor of Delta because there is no direct negligence of any Delta employees relative to the subject flight?

    Delta answers:  Yes.


2.  Should this Court grant summary judgment in favor of Delta because Delta has no vicarious liability for the alleged conduct of ExpressJet?

    Delta answers:  Yes.

## <u>STATEMENT OF CONTROLLING/MOST APPROPRIATE AUTHORITY</u>

Pursuant to E.D. Mich. L.R. 7.1(d)(2), Delta provides the following as the controlling and/or most appropriate authority for the relief sought.

### <u>Cases</u>

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)

*Craig ex rel. Craig v. Oakwood Hosp.*, 471 Mich. 67, 684 N.W.2d 296 (2004).

*Duran v. Detroit News, Inc.*, 200 Mich. App. 622, 504 N.W.2d 715 (1993)

*Freese v. Cont'l Airlines, Inc.*, No. 1:08-CV-1070, 2009 WL 2232857 (N.D. Ohio July 23, 2009), *aff'd in part, remanded in part on other grounds*, 412 F. App'x 770 (6th Cir. 2011)

*Haley v. United Airlines Inc.*, No. 14 C 2614, 2015 WL 5139638 (N.D. Ill. Aug. 31, 2015)

*In re Air Crash at Lexington, Ky., Aug. 27, 2006*, 2008 WL 2945944 (E.D. Ky. July 8, 2008)

*Laster v. Henry Ford Health Sys.*, 316 Mich. App. 726, 892 N.W.2d 442 (2016)

*Sponagle v. USAir Group*, 81 Ohio App. 3d 789, 612 N.E.2d 395 (Ohio Ct. App. 1992)

*Stanford v. Kuwait Airways Corp.*, 648 F. Supp. 1158 (S.D.N.Y.1986)

### <u>Rules</u>

Fed. R. Civ. P. 56

### <u>Regulations</u>

14 C.F.R. § 121.533

**INTRODUCTION**

Plaintiff Rhonda Costigan ("Plaintiff") alleges that Defendants Delta Air Lines, Inc. ("Delta") and ExpressJet Airlines, Inc. ("ExpressJet") (collectively, "Defendants") were negligent in regard to a sexual assault incident by a passenger that occurred while Plaintiff was onboard a flight. However, as Delta will establish, it is not a properly named party to this lawsuit. At the time of the alleged incident, the subject aircraft ("Aircraft") was exclusively operated by regional airline ExpressJet, which is a legal corporate entity separate and distinct from Delta. ExpressJet provided flight operations to Delta solely as an independent contractor, not an agent. Delta did not operate or control the Aircraft in which Plaintiff was a passenger when the alleged incident occurred. Delta had no control whatsoever over the passengers onboard the subject Aircraft. The entire flight crew on the Aircraft (pilots and flight attendants) was ExpressJet employees, not Delta employees. Delta had no control at all over the ExpressJet flight crew. Accordingly, Delta respectfully requests that this Court grant its motion for summary judgment under Fed. R. Civ. P. 56(c), as there is no triable issue of fact concerning Delta's liability for Plaintiff's alleged injuries.[1]

---

[1] Dismissal of Delta would not impede Plaintiff's ability in any way to pursue all of her claims solely against ExpressJet. ExpressJet is a large regional airline with its own liability insurance policy, which is more than adequate to cover any possible judgment or settlement in this case. (*See infra*, **Ex. K**, p. 34, Art. 14(A).)

1

## STATEMENT OF MATERIAL FACTS

On July 27, 2016, Plaintiff and her daughter were passengers on Delta Flight 5203 from Myrtle Beach International Airport ("MYR") to Detroit Metropolitan Wayne County Airport ("DTW") (the "Flight"). (Pl. Compl., Doc. #1-2, ¶¶ 8-9; **Ex. A**: Pl. Passenger Name Record ("PNR"); **Ex. B**: Decl. of Sharon L. Fischer, ¶ 3; **Ex. C**: Decl. of Rachelle Anderton, ¶ 4.) The Flight was operated by ExpressJet, not Delta. (**Ex. A**; **Ex. B**, ¶ 4; **Ex. C**, ¶ 5; **Ex. D**: Boarding Pass[2]; Delta's Answer, Doc. #8, ¶ 8; ExpressJet's First Am. Answer, Doc. #14, ¶ 8.)

Sometime after takeoff, and while the Flight was enroute, Plaintiff alleges that a flight attendant observed an unnamed first class passenger (the "passenger") masturbating with his penis exposed. (Doc. #1-2, ¶ 10.) Plaintiff alleges that the flight attendant notified the Flight's pilot about the passenger's conduct. (*Id.*, ¶ 11.) The flight attendant who witnessed the passenger masturbating then allegedly allowed the passenger to "roam the plane without supervision." (*Id.*, ¶ 12.) Allegedly with the flight attendant's knowledge, the passenger went from the first class cabin in the front of the Aircraft to the bathroom in the back of the Aircraft. (*Id.*, ¶ 13.) When returning from the bathroom, the passenger allegedly sat down in

---

[2] **Exhibit D** is the boarding pass for Plaintiff's daughter, Amber Costigan, who accompanied Plaintiff on the subject Flight. Plaintiff produced Amber Costigan's boarding pass in the course of discovery, but Plaintiff's own boarding pass was not produced. Regardless, Plaintiff's own boarding pass would be identical for that same Flight and would likewise state "operated by ExpressJet." (**Ex. B**, ¶ 14.)

an empty coach class seat next to the Plaintiff and sexually assaulted her. (*Id.*, ¶¶ 14-19.) After Plaintiff was allegedly assaulted, but before the Flight landed, the passenger returned to his first class seat where he continued masturbating, which was allegedly observed by a second flight attendant. (*Id.*, ¶¶ 20-21.)

As a result of the alleged sexual assault while the Flight was enroute, Plaintiff is seeking ten million dollars ($10,000,000.00) in past, present, and future economic and noneconomic damages. (*Id.*, ¶¶ 27-29, 32-33.) Plaintiff's alleged damages include, *inter alia*, mental anguish and "permanent injuries," as well as exemplary damages, including costs, interest and attorney's fees. (*Id.*) Plaintiff's alleged damages arise from claims for negligence and negligent infliction of emotional distress, which she has asserted against ExpressJet, the operator of the Flight, as well as Delta. (*Id.*, at pp. 4-8.)

Delta and ExpressJet are separate and distinct legal entities and ExpressJet is not a Delta subsidiary or otherwise legally affiliated with Delta. (**Ex. C**, ¶ 6.) Delta and ExpressJet have different corporate identification numbers, different states of incorporation, and different registered agents. (**Ex. E**: Michigan Dept. of Licensing and Regulatory Affairs ("LARA") Corp. Div. Summ. for Delta[3]; **Ex. F**: LARA Corp. Div. Summ. For ExpressJet.[4]) ExpressJet is a wholly-owned subsidiary of

---

[3] Publically available at https://cofs.lara.state.mi.us/CorpWeb/CorpSearch/Corp Summary.aspx?ID=801013600&SEARCH_TYPE=1.

[4] Publically available at https://cofs.lara.state.mi.us/CorpWeb/CorpSearch/Corp

the holding company, SkyWest, Inc. ("SkyWest"). (**Ex. C**, ¶ 6; **Ex. E**; **Ex. G**: SkyWest, Inc.'s Form 10-K, at p. 3.[5]) In addition to being separate corporate entities, Delta and ExpressJet are also separate and distinct airlines. Each has a unique designator code issued by the Federal Aviation Administration ("FAA"), and each has a unique FAA operating certificate: DALA062A and ASOA029B, respectively. (**Ex. H**: FAA Airline Cert. Info.–Delta[6]; **Ex. I**: FAA Airline Cert. Info.–ExpressJet.[7]) Delta is a mainline airline with a fleet of large jet aircrafts and a route network that services major cities. (**Ex. J**: Delta's Form 10-K, at p. 2.[8])

In order to service smaller markets, Delta has service agreements with multiple domestic regional airlines that operate smaller regional jets under the licensed service mark "Delta Connection," including a service agreement with the regional airline, ExpressJet. (**Ex. J**, at pp. 2-3; **Ex. K**: Ex. 1 to **Ex. B**, pp. 1-2, 42, Art. 1(A), 22(B).)[9] ExpressJet provides regional flying to Delta under a long-term,

---

Summary.aspx?ID=801062025&SEARCH_TYPE=1.

[5] Publically available at https://www.sec.gov/Archives/edgar/data/793733/000155837017001066/skyw-20161231x10k.htm.

[6] Publically available at http://av-info.faa.gov/detail.asp?DSGN_CODE=DALA&OPER_FAR=121&OPER_NAME=DELTA+AIR+LINES+INC.

[7] Publically available at http://av-info.faa.gov/detail.asp?DSGN_CODE=ASOA&OPER_FAR=121&OPER_NAME=EXPRESSJET+AIRLINES+INC.

[8] Publically available at https://www.sec.gov/ix?doc=/Archives/edgar/data/27904/000002790417000004/dal1231201610k.htm.

[9] **Ex. K** is the Second Amended and Restated Delta Connection Agreement between Delta and Atlantic Southeast Airlines, Inc. ("ASA") (known as ExpressJet

fixed-fee, code-share agreement, for which Delta generally pays ExpressJet fixed rates for operating the aircraft primarily based on computed flights, flight time and the number of aircraft under contract. (**Ex. G**, p. 3; **Ex. K**, pp. 5-17, Art. 3 (redacted).) Delta reimburses ExpressJet for specified direct operating expenses (including fuel expense) and pays a fee for ExpressJet to operate the aircraft. (**Ex. G**, p. 3; **Ex. K**, pp. 5-17, Art. 3 (redacted).)

To conduct these flight services, ExpressJet employs its own full-time pilots, flight attendants, customer service personnel, mechanics and other maintenance personnel, dispatchers, and operational and administrative personnel. (**Ex. G**, p. 14.) ExpressJet is subject to regulation by the DOT, FAA, and other governmental agencies, which require ExpressJet to independently maintain: operating, air worthiness, and other certificates; approval of personnel who engage in flight, maintenance or operating activities; and approval of flight training and retraining programs. (**Ex. G**, p. 14; **Ex. K**, pp. 37, 40, Art. 16(A)(3), 19(H).) In turn, Delta provides ExpressJet with certain facilities and services, such as information technology support, ticketing and reservations, scheduling, dispatching, fuel purchasing and ground handling services, none of which Plaintiff has pleaded or otherwise alleged are involved in any way to the alleged incident in this case. (**Ex. G**, p. 19; **Ex. K**, pp. 1, 3, 17-25, Art. 1(C)-(D), Art. 4-9.)

---

Airlines, Inc. since 2011), which is currently in effect and was in effect on July 27, 2016 ("Agreement"). (**Ex. B**, ¶ 5.)

ExpressJet was the sole operator of the Flight, and all of the crewmembers were employees of ExpressJet, not Delta – including the two pilots and the two flights attendants. (**Ex. B**, ¶¶ 4-12; **Ex. C**, ¶¶ 5, 7-11; **Ex. K**, p. 31, Art. 12(A)-(B).) The Agreement makes clear that Delta and ExpressJet are each independent contractors and not agents with respect to their performance of services under the Agreement and that Delta and ExpressJet's respective employees, agents, and independent contractors are not employees, agents, or independent contractors of each other. (**Ex. B**, ¶ 7; **Ex. K**, p. 31, Art. 12(A)-(B).) Neither airline has supervisory power or control over the other airline's employees. (**Ex. B**, ¶ 8; **Ex. K**, p. 31, Art. 12(A)-(B).) Specifically, Article 12 of the Agreement provides:

> A.    [ExpressJet] shall act as an independent contractor. The employees, agents and/or independent contractors of [ExpressJet] engaged in performing any of the services [ExpressJet] is obligated to perform pursuant to this Agreement shall be employees, agents and independent contractors of [ExpressJet] for all purposes and under no circumstances shall employees, agents or independent contractors of [ExpressJet] be deemed to be employees, agents or independent contractors of Delta. In its performance of obligations under this Agreement, [ExpressJet] shall act, for all purposes, as an independent contractor and not as an agent for Delta. Delta shall have no supervisory power or control over any employees, agents or independent contractors engaged by [ExpressJet] in connection with [ExpressJet]'s performance of its obligations hereunder, and all complaints or requested changes in procedure shall, in all events, be transmitted by Delta to a designated representative of [ExpressJet]. Nothing contained in this Agreement is intended to limit or condition [ExpressJet]'s control over its operation or the conduct of its business as an air carrier, and [ExpressJet] assumes all risks of financial losses which may result from the operation of the air services to be provided by [ExpressJet] hereunder.

B. Delta shall act as an independent contractor. The employees, agents and/or independent contractors of Delta engaged in performing any of the services Delta is to perform pursuant to this Agreement shall be employees, agents and independent contractors of Delta for all purposes and under no circumstances shall employees, agents and independent contractors of Delta be deemed to be employees, agents or independent contractors of [ExpressJet]. In performing its obligations under this Agreement, Delta shall act, for all purposes, as an independent contractor and not as an agent for [ExpressJet]. [ExpressJet] shall have no supervisory power or control over any employees, agents or independent contractors engaged by Delta in connection with the performance of its obligations hereunder, and all complaints or requested changes in procedure shall, in all events, be transmitted by [ExpressJet] to a designated representative of Delta. Nothing contained in this Agreement is intended to limit or condition Delta's control over its operation or the conduct of its business as an air carrier.

(**Ex. K**, p. 31, Art. 12(A)-(B).)

As further evidence of the independence of Delta and ExpressJet's respective employees with each other, the Agreement provides that for purposes of worker's compensation, Delta and ExpressJet's respective employees shall "under no circumstances" be deemed employees, agents, or independent contractors of each other, and Delta and ExpressJet are each responsible for their own employees' work-related injuries. (*Id.*, p. 33, Art. 13.) Also, ExpressJet is required to maintain various types of insurance coverage to cover losses it may incur; it does not rely on Delta to cover its losses. (*Id.*, p. 34, Art. 14(A).)

The pilot-in-command of Plaintiff's flight, Captain John Adams, the co-pilot, First Officer Joshua McCoy, and both Flight Attendants, Verna Hayward and

Linz Garrett, applied for a job with ExpressJet, were hired by ExpressJet, trained by ExpressJet, worked for ExpressJet, and were paid by ExpressJet. (**Ex. C**, ¶¶ 9-10.) ExpressJet, not Delta, is responsible for hiring, supervising, training, paying, administering, disciplining, and firing its pilots and flight attendants, including the pilots and flight attendants working onboard the Flight on July 27, 2016. (*Id.*, ¶ 11; **Ex. B**, ¶ 12.) Delta has and had no such authority over ExpressJet relative to any of these functions. (**Ex. B**, ¶¶ 9-10; **Ex. C**, ¶ 11.) Both flight attendants were governed by the policies and procedures in ExpressJet's Flight Attendant Manual ("FAM"), not Delta's FAM, while onboard the subject Flight and with respect to the alleged sexual assault. (**Ex. C**, ¶ 12; **Ex. K**, p. 40, Art. 19(H); **Ex. L**: FAM (currently under review by the TSA for SSI).)

Here, Plaintiff testified that she has never had any frequent flyer status on Delta or any other airline. (**Ex. M**: Pl. Dep., 15:1-9.) She usually flies on airlines other than Delta, including Spirit Airlines, Southwest Airlines and sometimes American Airlines. (*Id.*, 16:3-15.) Plaintiff's "go-to" airline is Spirit, not Delta, because Spirit normally is cheaper. (*Id.*, 16:16-17.) However, Plaintiff booked the Flight on Delta because it was the cheapest option. (*Id.*, 22:21-23:3) Plaintiff testified that she booked airfare for the subject Flight on Delta's website, www.delta.com. (*Id.*, 20:3-23.) Plaintiff also admitted that the booking path on

www.delta.com provides information regarding which airline operated the Flight – here, ExpressJet – and that Plaintiff read this information. (*Id.*, 20:24-22:20.)

Federal law requires airlines to identify the name of the actual operating carrier on flight itineraries and schedules provided to the passenger. *See* 49 U.S.C. § 41712(c)(1)(A) ("It shall be an unfair or deceptive practice under subsection (a) for any … air carrier … offering to sell tickets for air transportation on a flight of an air carrier to fail to disclose, whether verbally in oral communication or in writing in written or electronic communication, prior to the purchase of a ticket … the name of the air carrier providing the air transportation"); 14 C.F.R. § 257.5 ("Each air carrier . . . providing flight itineraries and/or schedules for scheduled passenger air transportation . . . shall ensure that each flight on which the designator code is not that of the operating carrier is clearly and prominently identified"). Delta's contract of carriage, which applies to all of its regional carriers, provides: "If any carrier other than Delta is operating a flight, we will identify that carrier in our schedules and in written or oral communications with you during the booking process." (**Ex. N**: Delta's Contract of Carriage in effect on July 27, 2016, p. 51, Rule 394; **Ex. B**, ¶¶ 13-14.)

Plaintiff testified that it did not matter to her that the Flight was operated by ExpressJet rather than Delta. (**Ex. M**, 24:14-18.) The cost, not the operator of the Flight, was what mattered to Plaintiff when she booked the Flight. (*Id.*, 24:14-21.)

9

## STANDARD OF REVIEW

"The Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Rule 56 "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The movant has the initial burden of demonstrating the absence of any dispute as to a material fact, with all inferences being made in favor of the nonmovant. *Id.* at 323. Once the movant meets its burden, the burden then shifts to the nonmovant to present specific facts showing that a genuine issue for trial exists. *Matsushita Electric Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). To demonstrate a genuine issue, the nonmovant must come forth with sufficient evidence for which a jury could reasonably find for that party, and a mere "scintilla of evidence" is insufficient. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

## ARGUMENT

I. **There Is No Direct Negligence of Any Delta Employees Relative to the Subject Flight, and Delta Has No Vicarious Liability for the Alleged Conduct of ExpressJet**

    A. **Negligence Standards**

10

Plaintiff pleads a negligence claim against Delta for allegedly failing to protect Plaintiff from another passenger while the Aircraft was in flight. (Doc. #1-2, ¶¶ 23-29.) Since this case is a diversity action sounding in tort and pending in a Michigan federal court, Michigan substantive law applies. *See Pina v. FCA U.S. LLC*, 618 F. App'x 820, 821 (6th Cir. 2015).

Under Michigan negligence law, a plaintiff must show: 1) a duty owed by the defendant to the plaintiff; 2) a breach of that duty; 3) causation; and 4) damages. *See Schultz v. Consumers Power Co.*, 443 Mich. 445, 449 (1993). The standard of care airlines owe to passengers under Michigan law is that of an ordinarily prudent common carrier. *See Limmer v. Sw. Airlines*, No. 98 Civ. 75282, 2000 WL 1481022, at *3 (E.D. Mich. Sept. 27, 2000) (citing *Frederick v. City of Detroit*, 370 Mich. 425, 437-38 (1963)).

Proximate cause is a legal term of art that incorporates both cause in fact and legal (or "proximate") cause. *Craig ex rel. Craig v. Oakwood Hosp.*, 471 Mich. 67, 86, 684 N.W.2d 296, 309 (2004). The cause in fact element generally requires showing that "but for" the defendant's actions, the plaintiff's injury would not have occurred. *Id.* (quoting *Skinner v. Square D Co.*, 445 Mich. 153, 163, 516 N.W.2d 475 (1994)). As a matter of logic, a court must find that the defendant's negligence was a cause in fact of the plaintiff's injuries before it can hold that the defendant's negligence was the proximate or legal cause of those injuries. *Id.* Generally, an act

11

or omission is a cause in fact of an injury only if the injury could not have occurred without (or "but for") that act or omission. *Id*. A plaintiff must introduce evidence permitting the jury to conclude that the act or omission was a cause of the plaintiff's injuries. *Id*. A plaintiff cannot satisfy this burden by showing only that the defendant *may* have caused her injuries. *Id*. Under Michigan law, a plaintiff can establish that the defendant's conduct was a cause in fact of her injuries only if she "set[s] forth specific facts that would support a reasonable inference of a logical sequence of cause and effect." *Id*. (quoting *Skinner*, 445 Mich. at 174.) That is, a valid theory of causation "must be based on facts in evidence." *Id*.

**B.    There is No Direct Negligence of Any Delta Employees Regarding the Alleged Assault on the Subject Flight**

Generally, Michigan law will impose liability upon a defendant only for his or her own acts of negligence, not the tortious conduct of others. *Laster v. Henry Ford Health Sys*., 316 Mich. App. 726, 734, 892 N.W.2d 442, 447 (2016).

Here, Plaintiff alleges that the negligent acts were conducted by crewmembers of Delta "and/or" ExpressJet, without specifying which alleged acts were conducted by which of the two airlines' employees. (Doc. #1-2, ¶¶ 5, 10-13, 21, 24-28, 31, 33.) When each Defendant asked Plaintiff in interrogatories to specifically describe the alleged acts that Plaintiff contends constitute fault on behalf of Delta and separately on behalf of ExpressJet that caused Plaintiff's alleged injuries, Plaintiff provided identical answers to both interrogatories without

12

specifying which airline was responsible for which alleged conduct. (**Ex. O**: Pl. Answers to Delta's Interrog., Nos. 9-10; **Ex. P**: Pl. Answers to ExpressJet's Interrog., Nos. 9-10.)[10] However, Delta and ExpressJet's respective answers to Plaintiff's Complaint made clear that none of Plaintiff's allegations involved Delta, only ExpressJet (allegations which ExpressJet adamantly denies), since Delta did not operate the Flight and none of Delta's employees or agents were working onboard the Flight. (Doc. #8, ¶¶ 5, 10-13, 21, 24-28, 31, 33; Doc. #14, ¶¶ 5, 10-13, 21, 24-28, 31, 33.)

Under the Delta Connection Agreement, the only duties, if any, that Delta could have with respect to the subject Flight would be limited to information technology support, ticketing and reservations, scheduling, dispatching, fuel purchasing and ground handling services. (**Ex. K**, at pp. 1, 3, 17-25, Art. 1(C)-(D), Art. 4-9; **Ex. G**, p. 19.) However, Plaintiff does not allege that Delta breached any duties with respect to these services.

---

[10] Plaintiff's identical answer to Defendants' Interrogatories Nos. 9-10 (**Exs. O-P**):
Objection to the extent this request calls for a legal conclusion. Without waiving the objection, Plaintiff states that the pilot and flight attendants were aware of [passenger] Mr. Finkley's inappropriate conduct and failed to restrain or prevent Mr. Finkley from wandering the plane and assaulting other passengers. Upon learning that Mr. Finkley was involved in criminal behavior, he was not supervised while on the flight. In addition, the flight continued on to its final destination rather than turning around or landing sooner. Mr. Finkley was provided alcohol on board the flight which may have contributed to the assault against Plaintiff.

To the contrary, all of Plaintiff's allegations show that the alleged negligent conduct occurred while the Aircraft was in-flight (Doc. #1-2, ¶¶ 8-26). However, these alleged acts (which Defendants fully deny) could only have been conducted by ExpressJet crewmembers as all crewmembers onboard the Flight were employees of ExpressJet, not Delta. (Doc. #8, ¶¶ 5-33; Doc. #14, ¶¶ 5-33; **Ex. B**, ¶ 11; **Ex. C**, ¶¶ 7-10.) In other words, all of Plaintiff's allegations that the crewmembers failed to supervise and monitor the passenger who allegedly assaulted Plaintiff, and allegedly failed to intervene in the alleged sexual assault could only have been conducted by ExpressJet employees, not Delta employees as none were working on the Aircraft. The policies and procedures applicable to handling the alleged incident are dictated by the ExpressJet Flight Attendant Manual, not Delta Flight Attendant Manual, including safeguards, warnings or other protections provided to Plaintiff and any control exercised over the passenger. (**Ex. L** (currently under review by the TSA for SSI).)

Moreover, any negligent conduct related to the Delta Connection Agreement (e.g., information technology support, ticketing and reservations, scheduling, dispatching, fuel purchasing and ground handling services) is not even alleged to have caused the alleged sexual assault. (Doc. #1-2.)

As such, there are no specific facts that would support any inference of a logical sequence of events, wherein any conduct by Delta was a cause and

14

Plaintiff's alleged injuries were the effect. Plaintiff simply has no valid theory of causation against Delta. Therefore, since there are no facts establishing cause in fact, there can be no finding of direct negligence against Delta as a matter of law.

### C. Delta Has No Vicarious Liability for the Alleged Conduct of ExpressJet

Under Michigan law, a defendant is not vicariously liable for the tortious conduct of another unless that other person is either (1) an employee, or (2) an agent of the defendant. *Laster v. Henry Ford Health Sys.*, 316 Mich. App. 726, 728, 892 N.W.2d 442, 445 (2016). Under the theory of *respondeat superior*, an employer may be liable for the negligent acts of its employee if the employee was acting within the scope of his employment. *Id.* at 734. As will be shown below, the ExpressJet crew members working on the Flight were not Delta employees. Therefore, *respondeat superior* fails as a theory of liability.

In the absence of an employer-employee relationship, vicarious liability may also attach through the concept of agency. In an agency relationship, it is the power or ability of the principal to control the agent that justifies the imposition of vicarious liability. *See Breighner v. Mich. High Sch. Athletic Ass'n, Inc.*, 255 Mich. App. 567, 583, 662 N.W.2d 413 (2003); *Little v. Howard Johnson Co.*, 183 Mich. App. 675, 680, 455 N.W.2d 390 (1990). Conversely, an absence of control is the reason why an employer is generally not liable for the actions of an independent contractor. *See Campbell v. Kovich*, 273 Mich. App. 227, 233-34, 731 N.W.2d 112

(2006). "An independent contractor is one who, carrying on an independent business, ***contracts to do a piece of work according to his own methods***, and without being subject to control of his employer as to the means by which the result is to be accomplished, but only as to the result of the work." *Utley v. Taylor & Gaskin, Inc*., 305 Mich. 561, 570, 9 N.W.2d 842 (1943) (quotation marks and citation omitted; emphasis added). The labels that the parties use in such a relationship are not dispositive. Instead,

> [t]he test for whether a worker is an independent contractor or an employee is whether the worker has control ***over the method of his or her work***: If the employer of a person or business ostensibly labeled an "independent contractor" retains control ***over the method of the work***, there is in fact no contractee-contractor relationship, and the employer may be vicariously liable under the principles of master and servant.

*Campbell*, 273 Mich. App. at 234, 731 N.W.2d 112 (quotation marks and citations omitted; emphasis added). For this reason, not just any type of control will suffice to transform an independent contractor into an employee or agent; rather, the control must relate to the method of the actual work being done. *Id*.

Numerous courts have found a lack of an agency relationship between mainline and regional airlines, such as Delta and ExpressJet in this case. *See*, *e.g.*, *Stanford v. Kuwait Airways Corp*., 648 F. Supp. 1158, 1161 (S.D.N.Y. 1986) (regional airline, KAC, was not acting agent for mainline carrier, Northwest, when KAC provided air transport to plaintiff); *Sponagle v. USAir Group*, 81 Ohio App.

16

3d 789, 612 N.E.2d 395, 396 (Ohio Ct. App. 1992) ("[W]hat existed between Piedmont [mainline] and Jetstream [regional] was no more than an agreement between a major airline and a commuter airline to provide various services for each other . . . Jetstream was to act as an independent contractor and not as Piedmont's agent."); *In re Air Crash at Lexington, Ky., Aug. 27, 2006*, No. 5:06-CV-316, 2008 WL 2945944, at * 6 (E.D. Ky. July 8, 2008) ("Delta had neither the ability nor the right to control any of the operational aspects of Comair Flight No. 5191. Therefore . . . it is clear that Delta cannot be vicariously liable for the alleged tortious conduct of Comair and/or its employees"); *Freese v. Cont'l Airlines, Inc*., No. 1:08-CV-1070, 2009 WL 2232857, at *6 (N.D. Ohio July 23, 2009) (regional carrier ExpressJet was plaintiff's common carrier rather than mainline carrier, Continental), *aff'd in part, remanded in part on other grounds*, 412 F. App'x 770 (6th Cir. 2011); *Haley v. United Airlines Inc*., No. 14 C 2614, 2015 WL 5139638, at *5 (N.D. Ill. Aug. 31, 2015) (summary judgment warranted because the mainline carrier, United, did not owe Plaintiff the requisite duty of care for carriage on the regional airline, Colgan Air).

In *Freese*, the plaintiff's claims for negligence, negligent failure to train, and negligence per se all arose from a single incident on Continental Flight 2243, where hot water was spilled onto plaintiff's lap by a flight attendant. 2009 WL 2232857, at *5. Continental moved for summary judgment on the basis that it was

17

not the correct party to that suit because it did not control or operate the flight on which plaintiff was allegedly injured; did not play any role in the incident; and did not train the flight attendant. *Id*. Instead, like here, the operator of Flight 2243 was ExpressJet, not Continental. *Id*. The flight attendant, who was the alleged tortfeasor, was an ExpressJet employee who was hired, trained, paid and controlled by ExpressJet. *Id*. Continental and ExpressJet were two entirely different companies and Continental had no control or supervisory role over ExpressJet or the flight attendant. *Id*.

The *Freese* court found that, "ExpressJet was the common carrier in this instance because ExpressJet operated Flight 2243 and exercised control over the passengers; Continental never assumed such a responsibility." *Id*. at *6. The fact that plaintiff's ticket had been purchased from the Continental website did not create a direct relationship with Continental when the booking path for the subject flight showed that the flight was operated by ExpressJet. *Id*. Continental listed under the flight description that ExpressJet operated the flight. *Id*. Plaintiff was put on notice that ExpressJet operated Flight 2243 when the tickets were purchased. *Id*. "At no point beyond perhaps the flight gate could Continental exercise practical control over the passengers." *Id*. The flight crew was solely comprised of ExpressJet employees, all of whom were trained by ExpressJet, and ExpressJet operated the plane. Continental was not acting as a common carrier for the

plaintiff. *Id*. Accordingly, the *Freese* court granted summary judgment for Continental, which the Sixth Circuit affirmed. *Id*. at *8, *aff'd*, 412 F. App'x at 771.

The same result was reached in *Haley*. 2015 WL 5139638, at *4. In entering judgment for United, the court relied in part on federal aviation regulation ("FAR") 14 C.F.R. § 121.533, which addresses "operational control" over domestic flights. Section 121.533 states that the "pilot in command of an aircraft is, during flight time . . . responsible for the safety of the passengers, crewmembers, cargo, and airplane." *Haley*, 2015 WL 5139638, at *4 (citing § 121.533(d)). The court entered summary judgment in favor of United finding that the pilot in command, who was thus ultimately "responsible for the safety of the passengers," was an employee of the regional airline, Colgan Air, and not a United employee.

Here, ExpressJet – not Delta – controlled and operated the Aircraft, all the ExpressJet crewmembers, and all the passengers onboard the Flight. (**Ex. B**, ¶¶ 8-12; **Ex. C**, ¶¶ 7-11; **Ex. K**, p. 31, Art. 12(A)-(B).) The work performed by Delta employees relative to the subject Flight, if any, is limited by the Delta Connection Agreement to information technology support, ticketing and reservations, scheduling, dispatching, fuel purchasing and ground handling services. (**Ex. K**, pp. 1, 3, 17-25, Art. 1(C)-(D), Art. 4-9; **Ex. G**, p. 19.) Like in *Freese*, *supra*, the fact that Plaintiff's ticket had been purchased from the Delta website does not create a direct relationship with Delta when the booking path, the itinerary and the boarding

19

passes all showed that the Flight was operated by ExpressJet, not Delta. (**Ex. A**; **Ex. B**, ¶¶ 13-14; **Ex. D**; **Ex. Q**: Ex. 2 to **Ex. B**, screenshot of Delta's website showing ExpressJet as operator.) Plaintiff had actual notice and knowledge that ExpressJet was the operator of the Flight. (**Ex. M**, 20:24-22:20.)

ExpressJet was the designated operator of the Flight and was solely responsible for the flight's operational activities, including its approved flight personnel, as well as personnel training. (**Ex. B**, ¶¶ 4, 7-12; **Ex. C**, ¶¶ 5-11; **Ex. K**, p. 31, Art. 12(A)-(B).) All of the employees, which included the two pilots and two flight attendants, were all ExpressJet employees. (**Ex. B**, ¶ 11; **Ex. C**, ¶¶ 7-11; **Ex. K**, p. 31, Art. 12(A)-(B).)

Plaintiff alleges that conduct by the Flight's crewmembers – and that conduct alone – caused or contributed to the Plaintiff's alleged injuries. (Doc. #1-2, ¶¶ 8-26.) There are no facts to establish Delta had any control whatsoever over the operation of the Flight or the crewmembers working onboard the Flight. Instead, the facts show that ExpressJet alone had exclusive control of the Flight and the crewmembers onboard the subject Flight. (**Ex. B**, ¶¶ 4, 7-12; **Ex. C**, ¶¶ 5-11; **Ex. K**, p. 31, Art. 12(A)-(B).) Further, as stated previously, ExpressJet, not Delta, is responsible for hiring, supervising, training, paying, administering, disciplining, and firing its pilots and flight attendants, including the pilots and flight attendants working onboard the Flight on July 27, 2016. (**Ex. B**, ¶ 12; **Ex. C**, ¶ 11.) Delta has

and had no such authority over ExpressJet relative to any of these functions. (**Ex. B**, ¶ 12; **Ex. C**, ¶ 11.) Accordingly, under these facts, Delta cannot have any vicarious liability for the alleged conduct of ExpressJet.

This finding is consistent with previous cases holding that there is no agency relationship between mainline and regional airlines. ExpressJet was not acting as Delta's agent when it provided air transport to Plaintiff. (**Ex. B**, ¶¶ 7-10; **Ex. C**, ¶¶ 6-7; **Ex. K**, p. 31, Art. 12(A)-(B).) Instead, what existed between Delta and ExpressJet was no more than an airline industry standard agreement between a major airline and a regional commuter airline to provide various services for each other. (**Ex. B**, ¶¶ 5-7; **Ex. K**.) ExpressJet was an independent contractor and not Delta's agent. (**Ex. B**, ¶¶ 7-12; **Ex. C**, ¶¶ 6-11; **Ex. K**, p. 31, Art. 12(A)-(B).) Delta had neither the ability nor the right to control any of the operational aspects of the Flight, aside from setting the origins, destinations, and times of flights. (**Ex. B**, ¶¶ 8-10; **Ex. C**, ¶¶ 7-11; **Ex. K**, p. 31, Art. 12(A)-(B).) Under 14 C.F.R. § 121.533, the ExpressJet pilot-in-command had "operational control" over the Flight, and had responsibility for the safety of the Flight's passengers, including Plaintiff. *See Haley*, 2015 WL 5139638, at *4 (citing § 121.533(d)). As stated, the pilots of the subject Flight were employees of ExpressJet, and not Delta employees. (**Ex. B**, ¶¶ 7-12; **Ex. C**, ¶¶ 7-11; **Ex. K**, p. 31, Art. 12(A)-(B).)

Therefore, it is clear that Delta cannot be vicariously liable for the alleged tortious conduct of ExpressJet and/or its employees. Delta was not Plaintiff's common carrier – ExpressJet was. Summary judgment is warranted because Delta did not owe Plaintiff any duty of care for her carriage on ExpressJet.

Under these circumstances, Plaintiff's claims against Delta are not cognizable. Accordingly, because Delta is not a proper party to this lawsuit, the present motion for summary judgment is amply warranted and Delta should be dismissed from this action as a matter of law.

### D.      Delta Cannot Be Liable for Negligent Infliction of Emotional Distress

In Michigan, the tort of negligent infliction of emotional distress is limited only to situations where a plaintiff witnesses negligent injury to a third person and suffers mental disturbance as a result. *Duran v. Detroit News, Inc.*, 200 Mich. App. 622, 629, 504 N.W.2d 715, 720 (1993) (citing *Deitz v. Wometco W. Mich. TV, Inc.*, 160 Mich. App. 367, 380-381, 407 N.W.2d 649 (1987); *Wargelin v. Mercy Health Corp.*, 149 Mich. App. 75, 385 N.W.2d 732 (1986)).

Here, Plaintiff cannot produce any evidence of negligent infliction of emotional distress. Plaintiff does not allege, did not testify, and cannot offer any other evidence showing that she witnessed any negligent injury to a third person. Additionally, any suggestion that Plaintiff witnessed a negligent injury to herself does not support a claim for negligent infliction of emotional distress under

Michigan law. *See Duran*, 200 Mich. App. at 629. Plaintiff's claim for negligent infliction of emotional distress should be dismissed pursuant to Fed. R. Civ. P. 56.

## CONCLUSION

For all of the foregoing reasons, Delta respectfully requests that the Court grant its motion for summary judgment and dismiss with prejudice all of Plaintiff's claims against it. ExpressJet fully concurs with Delta's motion.

Dated:  January 4, 2018                       Respectfully submitted,

/s/Scott R. Torpey
Scott R. Torpey (P36179)
Justin M. Schmidt (P78125)
JAFFE RAITT HEUER & WEISS, P.C.
*Attorneys for Defendants*
27777 Franklin Road, Suite 2500
Southfield, Michigan 48034
(248) 351-3000
(248) 351-3082 (Fax)

## CERTIFICATE OF SERVICE

I hereby certify that on January 4, 2018, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing to the attorneys of record.

/s/ Katherine M. Abrignani

23